# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RONNIE BELL                                    CIVIL ACTION

VERSUS                                         15-728-SDD-RLB

AMERICAN EAGLE AIRLINES

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, American Eagle Airlines ("Defendant").  Plaintiff, Ronnie Bell ("Plaintiff") has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3]  For the following reasons, the Court finds that Defendant's motion should be granted.

## I.    FACTUAL BACKGROUND[4]

Plaintiff is an African-American male who was hired by Defendant, a regional commercial airline, in May of 2008.  Plaintiff worked as a Station Agent at the Baton Rouge Metropolitan Airport.  Plaintiff's job duties as a Station Agent included, *inter alia*, working at the ticket counter, on the ramp, in baggage services, and in the movement of equipment to load and unload passengers from an aircraft.

On August 25, 2011, Plaintiff, along with other employees of various races and both genders, was counseled regarding his alleged failure to complete required training.  Plaintiff received a First Advisory discipline document for an incident that occurred on

---

[1] Rec. Doc. No. 14.
[2] Rec. Doc. No. 21.
[3] Rec. Doc. No. 22.
[4] The facts are taken from Rec. Docs. 8, 9, 14-1, 14-3, and 21.
38269

November 29, 2011, after the Defendant had been assigned to de-ice an aircraft in October of 2011.  A Second Advisory was issued to Plaintiff on December 14, 2011 because he failed to complete required training by the December 5, 2011 deadline. Plaintiff had previously been counseled regarding the importance of timely completing required training.  Defendant contends a notice of this training requirement had been posted for a month advising employees that the training deadline was December 5, 2011. This Second Advisory informed Plaintiff that his failure to correct the issues within two years, or any further company violations, could result in "further corrective action, up to and including termination."[5]

Despite this Second Advisory, Plaintiff was subsequently involved in an incident on December 18, 2011, when he pulled a jetbridge to an aircraft and set its adapter so that passengers could board.  Although Defendant contends that Plaintiff had been properly trained on the correct way to execute this task, he allegedly set the adapter about one foot from the top step of the aircraft and about six to eight inches over it which caused damage to the aircraft.  The damage was observed by Defendant's station agent Megan Hoffman ("Hoffman") when the jetbridge was removed, and she reported the damage to Sandy Gibson ("Gibson"), the lead agent over Plaintiff and Hoffman.  When this aircraft landed in Charlotte, North Carolina, Defendant's personnel observed the damage and notified the American Eagle Baton Rouge airport office.  Additionally, the Charlotte personnel conducted a mechanical investigation which delayed the aircraft's departure from Charlotte.

---

[5] Rec. Doc. No. 14-3, p. 65 (Exhibit 7 to Deposition of Ronnie Bell).
38269

Baton Rouge General Manager Bonnie Sutton ("Sutton") interviewed Plaintiff regarding this incident, and Plaintiff refused to accept any responsibility for the aircraft damage.[6]  Plaintiff then conducted his own re-enactment of the incident without notifying Sutton, which alarmed Sutton as such a re-enactment risked further damage to the aircraft.

Sutton ultimately concluded that Bell's placement of the adapter caused the aircraft damage and constituted violations of Company Rules of Conduct 14, 17, and 24.[7] Because Plaintiff committed these company violations after having received a Second Advisory for previous performance issues, Defendant terminated Plaintiff's employment on January 3, 2012.[8]  Defendant also terminated Caucasian employee Sandy Gibson based on her conduct during the same aircraft damage incident.[9]

Plaintiff offers a different version of these events.  Plaintiff contends that his First Advisory resulted from performing a task that he did not believe he was properly trained to execute, and Plaintiff claims he advised the lead agent several times that he was ill-prepared to perform these duties.[10]   Plaintiff contends the Second Advisory for failing to complete the required training was due to the fact that the lesson was on December 5, 2011, while he was on vacation.  Plaintiff claims he completed this lesson after he returned from vacation on December 15, 2011.[11]

Regarding the December 18, 2011 incident in which the aircraft was damaged,

---

[6] *Id.* at p. 75.
[7] Rec. Doc. No. 14-3, p. 66 (Exhibit 9 to Deposition of Ronnie Bell).
[8] *Id.*
[9] Rec. Doc. No. 14-3, p. 69 (Exhibit 11 to Deposition of Ronnie Bell).  Sandy Gibson allowed the aircraft to depart Baton Rouge despite noticing and reporting the damage allegedly caused by Plaintiff.
[10] Rec. Doc. No. 21, p. 2.
[11] *Id.*
38269

Plaintiff contends that he operated the jetbridge and adapter in the manner he was trained, and American Eagle employee Hoffman boarded and exited the aircraft four times without noticing any damage to the aircraft.[12]  Plaintiff contends that, despite this alleged failure to properly set the jetbridge and adapter, he was never re-trained on this duty prior to his termination, although he was tasked with performing this duty for at least two weeks without re-training.[13]

Plaintiff maintains that he was disciplined and ultimately terminated because he is African-American.  Plaintiff claims that Defendant engaged in disparate treatment of Caucasian employees who had performance issues but were not disciplined or terminated.  Plaintiff contends Caucasian employee Gregory Long ("Long") violated the same rules as Plaintiff on December 10, 2011, but he was given a Final Advisory rather than being terminated.[14]  Plaintiff claims that Long continued to have performance issues but was never terminated despite the previous Final Advisory.  Plaintiff also claims that Caucasian employee Steven Jones ("Jones") committed numerous company violations but was not given any advisories for same.  Plaintiff makes similar claims about employees Hoffman, "Mairlyn (last name unknown)",[15] and Gibson – that these American Eagle employees committed similar infractions but were not disciplined or terminated because they are Caucasian.[16]

Plaintiff filed this lawsuit against Defendant claiming that he was terminated

---

[12] *Id.* at p. 3.
[13] *Id.*
[14] *Id.*
[15] *Id.* at p. 4.
[16] *Id.*
38269

because of his race in violation of Title VII of the Civil Rights Act of 1964[17] and the Louisiana Employment Discrimination Law ("LEDL").[18]    Defendant now moves for summary judgment on all claims.

## II.    LAW AND ANLYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[20]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[21]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[22]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[23]

---

[17] 42 U.S.C. § 2000e, *et seq.*
[18] La. R.S. § 23:301, *et seq.*
[19] Fed. R. Civ. P. 56(a).
[20] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[21] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[22] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[23] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
38269

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[24]  All reasonable factual inferences are drawn in favor of the nonmoving party.[25]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[26]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[27]

## B.  Title VII Race Discrimination

In order to survive summary judgment, a plaintiff must satisfy the *McDonnell Douglas* burden-shifting framework.[28] Under this framework, a plaintiff must first establish a *prima facie* case of discrimination.[29]  If he successfully does so, the defendant must respond by setting forth its legitimate, non-discriminatory reason for firing the plaintiff.[30] If the defendant produces a legitimate reason, any presumption of discrimination raised by the plaintiff's *prima facie* case vanishes.[31]  The plaintiff may still avoid summary judgment if he "offers sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext

---

[24] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[25] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[26] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[27] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[28] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[29] *Id.*
[30] *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005).
[31] *Id.*
38269

alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)."[32]

1. _Prima Facie_ Case

The Plaintiff must first establish a *prima facie* case of discrimination by showing that he (1) is a member of a protected class, (2) was qualified for the position, (3) was subjected to an adverse employment action, and (4) that others similarly situated were treated more favorably under nearly identical circumstances.[33]  Defendant contends Plaintiff cannot establish a *prima facie* case because he cannot satisfy the fourth requirement:  Plaintiff has no summary judgment evidence that American Eagle treated similarly situated Caucasian employees more favorably.

A Title VII plaintiff may establish the fourth element of his *prima facie* case by proffering a fellow employee as a comparator to demonstrate that the employment actions at issue were taken "under nearly identical circumstances."[34]  The employment actions occur under nearly identical circumstances "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[35]  Importantly, the plaintiff's conduct that drew the adverse employment decision must have been "'nearly identical' to that of the proffered comparator who

---

[32] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).
[33] *Id.*
[34] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.1991) (internal quotation marks omitted).
[35] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).
38269

allegedly drew dissimilar employment decisions."[36]   If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.[37]

Plaintiff maintains that he has met his *prima facie* burden by offering evidence that Caucasian employees Jones, Long, Hoffman, Gibson, and "Marilyn" were not disciplined or terminated for committing similar or arguably greater company infractions.  Defendant counters that Plaintiff has offered only his subjective opinion that these employees were disparately treated, which is not competent summary judgment evidence.  The Court agrees.

First, Plaintiff failed to follow the Local Rules and controvert Defendant's *Statement of Uncontested Material Facts*;[38] thus, those facts are deemed admitted.[39]  The Court acknowledges that "*pro se* pleadings are held to less stringent standards than pleadings drafted by lawyers,"[40] and "*pro se* pleadings must be treated liberally;"[41] however, "a *pro se* litigant is not 'exempt ... from compliance with the relevant rules of procedural and substantive law.'[42]  A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[43]

---

[36] *Id.*

[37] *Id.*

[38] Rec. Doc. No. 18-3.

[39] *See* Local Rule 56(b); *Bagneris v. Cain*, No. 13-431-SDD, 2015 WL 4644610 at *5 (M.D. La. Aug. 4, 2015).

[40] *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[41] *U.S. v. Robinson*, 78 F.3d 172, 174 (5th Cir.1996); *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).

[42] *NCO Financial Systems, Inc. v. Harper–Horsley*, No.07–4247, 2008 WL 2277843 at *3 (E.D.La. May 29, 2008), quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).

[43] *Id.*, citing *Birl*, 660 F.2d at 593.

38269

Second, Plaintiff attaches *Affidavits* from a different case as evidentiary support for his case, which is improper summary judgment evidence. These *Affidavits* do not reference Plaintiff in any way, and they do not serve to create an issue of fact in this case. An affidavit cannot be used to preclude summary judgment unless it contains competent and otherwise admissible evidence.[44]

Third, Plaintiff fails to present any evidence that he and his alleged comparators are "similarly situated" or that the employment actions at issue were taken under "nearly identical circumstances." Thus, even taking as true Plaintiff's statements that these employees committed infractions but were not disciplined or terminated, the Court has nothing from which to determine whether these employees are truly Plaintiff's comparators. There is no evidence that the proffered employees hold the same job responsibilities as Plaintiff or had essentially comparable violation histories. Further, Defendant has offered uncontroverted competent summary judgment evidence that some of the proffered comparators were, in fact, terminated for company violations. The record reflects that Bonnie Sutton, the alleged discriminator, terminated Caucasian employees Gibson, Long, and Dustin Tatum.[45] Plaintiff has failed to carry his *prima facie* burden in this case.

2. Legitimate, Non-discriminatory Reason/Pretext

Notwithstanding the Court's finding above, assuming Plaintiff could meet his *prima facie* burden, Defendant has presented a legitimate, non-discriminatory reason for Plaintiff's termination, which Plaintiff is required to demonstrate is pretextual to survive

---

[44] *See* Fed.R.Civ.P. 56(c).
[45] *See* Rec. Doc. No. 14-3, pp. 117-120.
38269

summary judgment.   Defendant has presented summary judgment evidence that it terminated Plaintiff based on its determination that Plaintiff's job performance was unsatisfactory.  The record contains documents evidencing several disciplinary write-ups and two written advisories for Plaintiff's conduct prior to the aircraft damage incident in December of 2011.[46]

To survive summary judgment, Plaintiff must present competent summary judgment evidence of pretext.  "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."[47]   The key issue with pretext is whether the employer's justification, "even if incorrect, was the real reason for the plaintiff's termination. A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[48]

Plaintiff offers no evidence of pretext for the legitimate, non-discriminatory reason for his termination.  Plaintiff's claims of disparate treatment of comparators fails for the reasons set forth above.   Plaintiff's deposition testimony establishes that Plaintiff disagrees with the business decision made by Defendant, and Plaintiff disagrees with Defendant that he was appropriately trained for the tasks he was required to perform. This, however, is not evidence of pretext.  "[A] plaintiff cannot prove that an employer's proffered reason is pretextual merely by disputing the correctness of the employer's

---

[46] Rec. Doc. No. 14-3, p. 66 (Exhibit 9 to Deposition of Ronnie Bell).
[47] *Palacios v. City of Crystal City, Tex.*, 634 Fed.Appx. 399, 402 (5th Cir. 2015) (citation omitted).
[48] *Goudeau v. National Oilwell Varco, L.P.,* 793 F.3d 470, 476 (5th Cir. 2015)(citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,147-148 (2000)).
38269

decision."[49]   Further, "in conducting a pretext analysis, we do not engage in second-guessing of an employer's business decisions. Title VII does not require employers to make correct decisions, only nondiscriminatory decisions."[50]  Plaintiff's disagreement with the correctness of his training, discipline, and ultimate termination by Defendant is not evidence of pretext, and the Court may not second-guess the business decision of the Defendant in this regard.   Moreover, the evidence that Defendant terminated three Caucasian employees for performance issues undermines any suggestion of pretext that race was a motivating factor in Defendant's decision to terminate the Plaintiff. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII claim.

### C.  LEDL Claim

Plaintiff also filed a race discrimination claim under the LEDL.  Defendant moves to dismiss this claim as untimely and for the same substantive reasons as under Title VII. The LEDL provides:  "Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year."[51]  "[T]his one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission," but such suspension of the prescriptive period is limited to six months.[52]  Accordingly, any claim under the LEDL that arose more than 18 months prior to the filing of the complaint is untimely.[53]

The Defendant contends that, because Plaintiff was terminated on January 3,

---

[49] *Burton v. Texas Dep't of Criminal Justice*, 584 Fed.Appx. 256, 257 (5th Cir. 2014) (citations omitted).
[50] *Id.* at 258.
[51] La.Rev.Stat. § 23:303(D).
[52] *Id.*
[53] *See id.*; *Holliday v. Commonwealth Brands, Inc.*, No. 10–2785, 2012 WL 72468, at *2 (E.D.La. Jan.10, 2012).
38269

2012, the prescription clock on his LEDL claim began on that date.  Even allowing the six-month extension, Plaintiff had until July 3, 2013 to file suit alleging a claim under the LEDL.  It is undisputed that Plaintiff filed this lawsuit on October 30, 2015, more than two years late.[54]

Plaintiff argues that his LEDL claim is timely because he received a letter from the Louisiana Commission on Human Rights ("LCHR") stating that his charge of discrimination was timely.[55]  This is of no consequence in determining whether Plaintiff timely *filed suit*.  Whether Plaintiff timely filed his claim with the LCHR is not dispositive of whether he timely filed this lawsuit, and the record establishes that he did not.  Thus, Plaintiff's LEDL claim has prescribed.

Alternatively, the Court notes that Plaintiff's LEDL claim would be subject to summary judgment on the merits for the same reasoning and analysis set forth under Title VII.  The scope of the LEDL is the same as Title VII and, therefore, claims under the LEDL are analyzed under the Title VII framework and jurisprudential precedent.[56]  As such, the Court's ruling on Plaintiff's Title VII claim applies with equal force to any LEDL claims asserted.  Therefore, Defendant is also entitled to summary judgment on Plaintiff's LEDL claim.

---

[54] *See* Rec. Doc. No. 1.
[55] Rec. Doc. No. 21-1, p. 8.
[56] *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 477 (5th Cir. 2002); *Alderman v. Great Atlantic & Pacific Tea Co., Inc.*, 332 F.Supp.2d 932, 936 (E.D.La. 2004).
38269

III.    **CONCLUSION**

For the reasons set forth above, Defendant's *Motion for Summary Judgment*[57] is

GRANTED.  Plaintiff's claims are dismissed with prejudice.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on April 6, 2017.


_____

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[57] Rec. Doc. No. 14.
38269